**William H. WINN, Sr. and June C. Winn, Plaintiffs,**

v.

**SEIDMAN FINANCIAL SERVICES, a foreign limited partnership, and Seidman Financial Management, Inc., Defendants.**

No. G88–858 CA7.

United States District Court, W.D. Michigan.

March 8, 1989.

Roberts, Betz & Bloss, P.C. by Michael J. Roberts, Michael T. Small, Grand Rapids, Mich., for plaintiffs.

Varnum, Riddering, Schmidt & Howlett by Peter J. Armstrong, Grand Rapids, Mich., for defendants.

## OPINION

ENSLEN, District Judge.

The Winns filed this action in the Circuit Court for Wexford County, Michigan on October 26, 1988. Plaintiffs allege that defendants advised them to invest one million ($1,000,000) dollars in a mutual fund offered by Fidelity Investments ("Fidelity"). On several occasions, Mr. Winn contacted defendants stating that he believed the Fidelity shares should be redeemed. Representatives of the defendants advised against redemption, indicating that they would monitor the account and automatically sell all the shares if their value dropped below a certain point. During the stock market "crash" of October 19, 1987, the value of the shares apparently dropped below this level, but the shares were not sold. On October 20, 1987, Mr. Winn himself contacted Fidelity and ordered it to transfer his funds into a money market account. The plaintiffs sustained substantial losses

on their investment, and they allege that the losses were due to defendants' negligent misrepresentations, breaches of fiduciary duty, negligence and violation of two state statutes.

Defendants were served with the summons and complaint on November 4, 1988. They removed the case to this Court on December 1, 1988, alleging that diversity of citizenship existed between the parties. 28 U.S.C. §§ 1332, 1441. Plaintiffs filed a motion to remand, which is presently before the Court. Plaintiffs reside in Florida. Defendant Seidman Financial Services is a Delaware limited partnership whose sole general partner is defendant Seidman Financial Management, Inc., a Delaware corporation. The limited partner of Seidman Financial Services is BDO/Seidman, a New York general partnership. Some of the partners in BDO/Seidman are residents of Michigan and Florida. The plaintiffs allege that the citizenship of Seidman Financial Services must be determined by looking to the citizenship of both its general and limited partners. Defendants argue that only the citizenship of the general partner, Seidman Financial Management, Inc., is relevant. If the Court were to consider the citizenship of the limited partnership, diversity would be destroyed, because some of the partners of BDO/Seidman are citizens of Michigan and Florida. *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806).

As the dispute between the parties indicates, there is presently a split among the circuits on this issue. One view holds that limited partnerships must be treated as are other unincorporated associations, and their citizenship, for purposes of diversity jurisdiction must be determined by the citizenship of both the general and limited partners. *Elston Investments Ltd. v. David Altman Leasing Corp.*, 731 F.2d 436 (7th Cir.1984). Another view holds that limited partnerships are more analogous to corporations and business trusts, and that their citizenship must be determined by looking to the citizenship of the general partners, who are the "real" part[ies] to the controversy." *Mesa Operating Ltd. Partnership v. Louisiana In-*

*trastate Gas Corp.*, 797 F.2d 238, 240–41 (5th Cir.1986); *Williams v. Sheraton Inn, Inc.*, 514 F.Supp. 22 (E.D.Tenn.1980). It appears to me that the view adopted by the Fifth Circuit in *Mesa Operating* is the better reasoned position.

In *Mesa Operating*, the Fifth Circuit, relying on *Navarro Savings Association v. Lee*, 446 U.S. 458, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980), held that only the citizenship of general partners was relevant to the determination of a limited partnership's citizenship for diversity purposes. The court reached this conclusion because it found that the general partners had "exclusive power to manage and control all assets, conduct all business and control all litigation" on behalf of the limited partnership. *Mesa Operating*, 797 F.2d at 243. Thus, the general partners were the only "real parties to the controversy" and only their citizenship was relevant to the determination of diversity jurisdiction.

In *Navarro*, the Supreme Court held that the citizenship of a business trust was determined by the citizenship of its trustees, rather than that of its beneficiaries. The Court reasoned as follows:

> [T]hese respondents are active trustees whose control over the assets held in their names is real and substantial.... The respondents are not "naked trustees" who act as "mere conduits" for a remedy flowing to others. They have legal title; they manage the assets; they control the litigation. In short, they are real parties to the controversy. For more than 150 years, the law has permitted trustees who meet this standard to sue in their own right, without regard to the citizenship of the trust beneficiaries. We find no reason to forsake that principle today.

*Id.* 446 U.S. at 465–66, 100 S.Ct. at 1784.

While the holding in *Navarro* was limited to business trusts, the Fifth Circuit found, and I agree, that there is no basis for limiting its reasoning to that form of business organization. *See Mesa Operating*, 797 F.2d at 240. Like the business trust at issue in *Navarro*, the limited part-

nership at issue here is neither a corporation nor an association, but a hybrid form of business organization. Under Delaware law, the limited partners cannot control the business' assets or activities, and may sue on its behalf only under limited circumstances. 6 Del.Code Ann. § 17–1001. Thus, the general partner in Seidman Financial Services is the only partner who can have an affect on the conduct and outcome of this litigation. The limited partners are only tangentially involved in this litigation, and their citizenship simply should not be considered in determining whether diversity jurisdiction exists.

I acknowledge that the Seventh Circuit, and a number of other courts, have rejected the view I adopt here. But I find the reasoning of those cases unpersuasive, especially in light of *Navarro*. In *Elston*, for example, the Seventh Circuit refused to apply *Navarro*'s "real party to the controversy" test to a limited partnership because, unlike a trustee who "sues on his own behalf; an association ... brings actions in its own name on behalf of all the association's members." *Elston*, 731 F.2d at 438. This reasoning, it seems to me, ignores the Supreme Court's statement in *Navarro* that "a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Navarro*, 446 U.S. at 461, 100 S.Ct. at 1782. The limited partners at issue here have no power to sue on behalf of the partnership or to control its conduct in this litigation. While protection of the partnership's business interests is undoubtedly in their best interests, they are little more than formal or nominal parties. Their citizenship is irrelevant in determining whether diversity jurisdiction exists.

In short, I find that the citizenship of Seidman Financial Services' limited partners is irrelevant to the question of whether diversity jurisdiction exists in this case. Because there is complete diversity between the general partner in Seidman Financial Services, Seidman Financial Management, Inc., and the plaintiffs, diversity jurisdiction exists. Plaintiffs' motion to remand is, therefore, denied.